# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel DONALD HICKS, | ] ] ] | |
| Plaintiff, | ] ] | |
| v. | ] ] | CV-98-N-00154-NE |
| CHRYSLER CORPORATION d/b/a/ PENTASTAR ELECTRONICS, PEI ACQUISITION CORPORATION, INC., and JEWELL TONEY, | ] ] ] ] ] | |
| Defendants. | ] | |

**ENTERED**
JUN 1 8 2001

### Memorandum of Opinion

The Court has for consideration defendants Toney and PEI's Motion for Summary Judgment [Doc. 170] and Motion to Strike [Doc. 197], and Chrysler's Motion for Summary Judgment [Doc. 173] and Motion to Strike [Doc. 193]. The Court has reviewed the lengthy recitation of facts contained in the briefs of the parties and upon due consideration, all of the motions are due to be granted in part and denied in part.

### I. PEI and Toney's Motion to Strike

According to PEI and Toney, relator failed to file any initial disclosures pursuant to Fed. R. Civ. Pro. 26.1(a)(1). Additionally, relator failed to include in his supplemental disclosures the name of Fran Harbin as a "person likely to have discoverable information," and the declarations of Arthur Goodwin and Timothy Fuller, although both Goodwin and Fuller were listed as people with discoverable information. Defendants add that relator had the declarations in his possession at the time he submitted his supplemental disclosures.



Defendants believe that the Court should not consider the testimony of these persons in deciding defendant's summary judgment motion.

Fed. R. Civ. Pro. 37(c)(1) provides "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Harbin's affidavit is stricken because the relator never disclosed to the defendants that Harbin had discoverable information about the case.

As for Goodwin's and Fuller's affidavits, the Court will consider both on summary judgment. The Third Circuit employs a four part test in this sort of determination:

> In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000). The defendants provide the Court with no evidence of bad faith and the defendants knew both men were persons with information about the case. Additionally, the declarations were considered in ruling on the summary judgment motions but were not the sole reason for the Court's decision and therefore did not prejudice the defendants. Defendants will have an opportunity to cross-exam both men at trial.

In regards to the portion of Dobbs' affidavit referencing PEI's October 2, 2000 technical data package submitted to the government, the information is stricken. The document was not provided to the defendants and the defendants have not been provided a copy of the TDP upon which the opinion is based.

2

## II. Chrysler's Motion to Strike

The Court will not address each of the 96[1] facts Chrysler sought to strike, but will discuss the Court's ruling on a large number of the requests to strike.[2]

### A. Summerford's deposition testimony and expert report

Chrysler moved the Court to strike Summerford's deposition testimony and expert report because the expert opinion has no supporting facts. The Eleventh Circuit addressed this issue in *Evers v. GMC*, 770 F.2d 984 (11th Cir. 1985):

> The Thelin affidavit, filed two days before the hearing on Defendant's Motion for Summary Judgment, fails to provide any specific facts to support appellant's claim. n2 Moreover, this affidavit sharply contradicted the earlier deposition testimony of Dr. Huelke, who as a witness for appellant, explained at deposition that air bags are not designed to provide protection in a side impact, and that there was no defect in the vehicle related to appellant's injuries.
>
> When a properly supported summary judgment motion has been made Fed.R.Civ.P. 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him."
>
> This court has consistently held that conclusory allegations without specific supporting facts have no probative value.

*Evers*, 770 F.2d at 986; *see also In re Miller Indus. Sec. Litig.*, NO. 1:97-CV-2811-TWT, 2000 U.S. Dist. LEXIS 19921, at *19 (N.D. Ga. Nov. 20, 2000) ("As previously noted, 'a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations.' *Evers v. General*

---

[1] Chrysler withdrew its request to strike some of the facts in a later submission to the Court.

[2] These are not the only bases for the court's ruling on the motion.

3

*Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). The opinion of Plaintiffs' expert rests entirely upon speculation and conjecture. The Defendants are entitled to summary judgment upon the claim relating to the patent litigation judgment.") In this case, the expert report sets forth a basis for Summerford's findings and the defendants deposed Summerford. Therefore, the Court finds this evidence should not be stricken.

### B.     Unauthenticated documents

Chrysler sought to strike numerous documents submitted by the plaintiff which were unauthenticated. In *First National Life Ins. Ca. v. California Pacific Life Ins. Co.*, 876 F.2d 877 (11th Cir. 1989), a copy of a complaint and cross-complaint were not considered admissible evidence for summary judgment because they were not authenticated. *Id.* at 881. Further, in *City of Tuscaloosa v. Harcos Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998), the Eleventh Circuit noted that for purposes of summary judgment, a court would have to consider whether a written notation on a document was authenticated and the notation therefore could be considered on summary judgment. *Id.* at 559; *see also Burnett v. Stagner Hotel Courts*, 821 F. Supp. 678, 682-83 (N.D. Ga. 1993) (finding that a list prepared by the plaintiff must be authenticated to meet the requirements of Rule 56(e) and citing Wright & Miller); 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722:

> To be admissible, documents must be authenticated[ ] by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. Thus, a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition.

4

> As true of other material introduced on a summary-judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged.

Accordingly, the unauthenticated documents were not considered by the court in ruling on the summary judgment motions.

### III. Statute of Limitations

The applicable statute of limitation reads:

> A civil action under section 3730 may not be brought--
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b) (2001). The court must decide four issues before determining the merits of the arguments presented: when a "violation" occurs within the meaning of section 3731; whether section 3731(b)(2) applies to a relator; who constitutes an "official of the United States"; and whether fraudulent concealment must be proven in order to make use of the three-year limitations period. The government filed an amicus brief which was considered by the Court.

#### A. When a "Violation" Occurs

Both parts (1) and (2) of the statute use the term "violation." There is a difference of opinion among federal courts as to when a violation occurs. Many courts believe it is the date the claim for payment is made; other courts hold that it is the date of payment by the

5

government. AMERICAN BAR ASSOCIATION, QUI TAM LITIGATION UNDER THE FALSE CLAIMS ACT 32 (2d ed. 1999).

The relevant precedent in this circuit involves a case decided under the previous version of the False Claims Act (FCA). In that version, the six-year limitations period commenced at the time of "the commission of the act." *Smith v. United States*, 287 F.2d 299, 304 (5th Cir. 1961). The Fifth Circuit held that "the 'act' in question is the filing of the false claim." *Id*. With the different terminology in mind, this Court finds that a "violation" also is the filing of a false claim. *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) (citing a Supreme Court case for the proposition that a claim under the FCA is a "demand for money").

### B. Application of three-year limitations period to Relator

Defendants PEI and Toney argue that part (b)(2) of the statute, which allows for a three-year limitations period after knowledge of materials facts is gained, does not apply to a qui tam relator. Courts which have so held base their conclusion on the stautory language referencing the knowledge of an "official of the United States," and not a relator. *Thistlewaite v. Dowty Woodville Polymer, Ltd.*, 6 F. Supp. 2d 263, 265 (S.D.N.Y. 1998); *United States* ex rel. *Amin v. George Washington Univ.*, 26 F. Supp. 2d 162, 170-72 (D.D.C. 1998). Additionally, "the [FCA's] 1986 Amendment's legislative history indicates that Congress was concerned about the government not being able to bring an FCA cause of action because of difficulties in detecting fraud," *Amin*, 26 F. Supp. at 173, and specifically used the term "government" when discussing this part of the statute.

6

The Government and the Relator argue that section (b)(2) applies to cases brought by a relator because the entire statute of limitations applies to "[a] civil action under section 3730," which would include suits brought by relators. The Ninth Circuit, in *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1214 (9th Cir. 1996), and this Court agree. The language of the statute clearly indicates the statute of limitations applies to any civil action brought under section 3730, including qui tam actions brought by a relator. Moreover, "the legislative history of the Act is replete with many instances in which the word 'government' is used when referring to suits brought in the name of the United States by either the Attorney General or private *qui tam* plaintiffs." *Id*. The language pointed out by defendants is significant for the reasons explained below.

C.   **"Official of the United States"**

Part (b)(2) of the statute allows for a limitation period based on "the date when facts material to the right of action are known or reasonably should have been known by the *official of the United States* charged with responsibility to act in the circumstances" (emphasis added). Relator and the defendants argue that a relator can be an official in this context, as explained in the Ninth Circuit's *Hyatt* decision. *U.S. ex. Rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217-18 (9th Cir. 1996).

> The *qui tam* plaintiff is the only person "charged with responsibility to act in the circumstances." n8 Although he acts in the name of the United States, his suit must be founded on private facts known to him. 31 U.S.C. § 3730(e)(4). Indeed, Congress has denied any court jurisdiction over a *qui tam* action based on publicly disclosed information unless filed by someone who is the "original source of the information" which forms the basis of the complaint. United States ex. rel. Fine v. Chevron, U.S.A., 72 F.3d 740, 743 (9th Cir. 1995) (en banc), cert. denied, U.S. , 116 S. Ct. 1877, L. Ed. 2d (1996). Once the *qui tam* plaintiff has the requisite information, he cannot sleep on his rights. He

7

> is "charged with responsibility to act under the circumstances." Thus, as to the *qui tam* plaintiff knows or reasonably should have known the facts material to his right of action Hyatt concedes that the general FCA six-year statute of limitations would bar his complaint, but argues that the tolling provision sustains his case. Under Hyatt's theory, the FCA statute of limitations began running when officials within the United States government learned of the alleged fraud through service of his complaint. Thus, he contends he has an additional three years to file his suit, subject to the ten-year statute of repose. Hyatt's interpretation of the tolling provision would permit qui tam relators to control the length of their own limitations period by withholding their allegations until they are prepared to sue. Under this theory, *qui tam* relators could wait a full ten years after learning of the deceit before suing. This would frustrate the purposes of a limitation period and the purposes of the Act. Granting qui tam relators the power to wait nearly ten years to sue would allow fraud to continue and losses to mount. Furthermore, allowing a *qui tam* plaintiff to wait ten years might interfere with law enforcement: false claims are subject to criminal prosecution only within five years after the wrongful act is committed. 18 U.S.C. §§ 287, 3282 (1986). If relators wait over five years to report the fraud, the government will lose the right to seek a criminal penalty.

*Hyatt*, 91 F.3d 1211, 1217-18 (9th Cir. 1996). The government argues an official must be a government employee because of the clear language of the statute. Further, considering a relator to be an official of the United States would frustrate the purpose of the Act.

> The *Hyatt* construction frustrates the congressional policy by equating the early time when a relator may have knowledge of a violation of the Act within the period for running of the statute of limitations. If the government does not find out about the misconduct and the relator, who may lack certainty of knowledge, suffer from timidity, or have only sparse economic resources is unable to proceed until a later time, the contractor may insulate itself from liability by invoking a statute of limitations. This effect could defeat 31 U.S.C. § 3731(b) and the congressional intent.

*U.S., ex rel. Colunga v. Hercules Inc.*, 1998 WL 310481, at *4 (D. Utah March 6, 1998). Additionally, the limitations period would not be frustrated by reference to official knowledge rather than the relator's knowledge since a relator would not benefit from a

8

delayed filing of his suit because the relator would lose his or her stake in this litigation if someone else files first.

> This court will follow the guidance provided by Eleventh Circuit for these situations:
>
> As recently summarized by this Circuit in *Harris v. Garner*, 216 F.3d 970 (11th Cir.2000) (en banc), the starting point for all statutory interpretation is the language of the statute itself. We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and if the statutory language is clear, no further inquiry is appropriate. *Id.* If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent.

*FRB v. Thomas*, 220 F.3d 1235, 1239 (11th Cir. 2000). The plain language of the statute describes a person working for the government. Webster's New Collegiate Dictionary defines "official" as "one who holds or is invested with an office." WEBSTER'S NEW COLLEGIATE DICTIONARY 797 (1977). The relator does not hold nor is he invested with an office. Moreover, the legislative history supports this holding: "The statute of limitations does not begin to run until the material facts are known by an *official within the Department of Justice* with the authority to act in the circumstances." S. Rep No. 99-345, at 30 (1986). Therefore, this court holds that the appropriate official is someone within the Department of Justice.

### D.   Requirement to prove Fraudulent Concealment

The parties disagree as to whether fraudulent concealment must be proven in order for the relator to make use of the three-year period of limitations. The government argues that fraudulent concealment need not be established because it is not required by statute, the Ninth Circuit found it not to be a requirement,[3] and the legislative history shows Congress may have tried to avoid proof of fraudulent concealment. Defendants argue that

---

[3] *United States* ex rel. *Saaf v.* Lehman Bros, 123 F.3d 1307, 1308 (9th Cir. 1997) ("Although fraudulent concealment forms part of the historical rationale for the doctrine of equitable tolling, neither §§ 3731(b)(2) nor *Hyatt* imposes a requirement that a qui tam plaintiff must allege fraudulent concealment to actuate tolling under the FCA.")

2

the court in *United States* ex rel. *Sanders v. East Alabama Healthcare Authority*, 953 F. Supp. 1404 (M.D. Ala. 1996), was correct in finding that the relator must prove defendants fraudulently concealed a false claim. *Id.* at 1413. Relator seems to assume it is a requirement.

> The applicable law in the Eleventh Circuit is as follows:
>
> "Equitable tolling" is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. *See Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347, 22 L. Ed. 636 (1874) (where a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ..."). *See also Osterneck v. E.T. Barwick Indus.*, 825 F.2d 1521, 1535 (11th Cir.1987), *aff'd, Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989) (if third party is in privity, or a principal-agent relationship with the defendant exists, defendant's approval of the concealment may be sufficient to toll the statute). Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. *Holmberg*, 327 U.S. at 394-96, 66 S. Ct. 582.
>
> . . . .
>
> [W]hile equitable tolling *is* typically read into federal statutes of limitation, it cannot apply in the face of contrary congressional intent. *Id.* "The basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R. Co.*, 380 U.S. 424, 427, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965). To determine whether equitable tolling applies, courts "examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the . . . Act." *Id.*

*Ellis v. GMAC*, 160 F.3d 703, 706, 707 (11th Cir. 1998). The legislative history of the 1986 amendments to the FCA references the reasoning behind the three year provision:

> [T]he subcommittee added a modification of the statute of limitations to permit the Government to bring an action within 6 years of when the false claim is submitted (current standard) or within 3 years of when the Government learned of a violation, whichever is later. The subcommittee agreed that because fraud is, by nature, deceptive, such tolling of the statute of limitations is necessary to ensure the Government's rights are not lost through a wrongdoer's successful deception.

3

S. Rep No. 99-345, at 15. Additionally, "[s]ubsection (b) of section 3731 of title 31, as amended by section 3 of the bill, would include an *explicit* tolling provision on the statute of limitations under the False Claims Act." *Id.* at 30. This Court finds that Congress intended for the three-year period to begin at a time certain without consideration of fraudulent concealment. By using the term "explicit," it is clear Congress defined the necessary steps to toll the statute. Therefore, there is no requirement that the relator prove fraudulent concealment.

### E. Conclusion

The parties have not provided the court with sufficient evidence for the Court to decide which claims are or are not barred by the statute of limitations. Therefore, the motions are due to be denied as to these claims. The Court is sure the parties are capable, however, of determining, in accord with the above statement of the law, the claims which will proceed to trial. Any factual disputes will be decided by the jury.

## IV. ADEA claim

On July 10, 1997, Hicks timely filed a charge with the EEOC against Chrysler Corporation d/b/a Pentastar Electronics claiming that he lost critical employment and retirement benefits as a result of Chrysler's decision to sell Pentastar Electronics sometime prior to January 10, 1997. This was because Hicks was denied the opportunity to transfer back to a bargaining unit position prior to the sale of Pentastar to PEI, depriving Hicks of the opportunity to take early retirement and enjoy continued Chrysler employee benefits.

Hicks concedes that neither PEI nor Toney are subject to liability under the ADEA in this case. Hicks additionally admits he cannot sustain an action for disparate impact discrimination under the ADEA. His disparate treatment claim against Chrysler remains.

> In order to survive a motion for summary judgment, the plaintiff must first establish a prima facie case of age discrimination. This may be accomplished by presenting direct evidence of discriminatory intent, such as age-biased statements made by the decision maker, *see Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990); by presenting circumstantial evidence which complies with the test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); or by presenting a statistical pattern of discrimination, Earley, 907 F.2d at 1081.

*Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1457 (11th Cir. 1997). Hicks claims he has "direct" evidence of discrimination: four or five Pentastar employees who were transferred to Acustar were younger than many people not allowed to transfer, and Toney told Hicks a prospective employee was "'too god-damn old" and Toney wanted a younger person in the position. (Opponent's Response to Chrysler [Doc. 185] at 46.) This is not direct evidence. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, Hicks must sustain a prima facie case using either statistics or circumstantial evidence. Hicks cites no statistics, so the court turns to the prima facie case for circumstantial evidence.[4]

Whether the court views this as a failure to promote or adverse employment action, Hicks cannot prove his prima facie case. In an adverse employment action case, the plaintiff must show he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or

---

[4] Chrysler also alleges Hicks has not exhausted his administrative remedies and Hicks cannot rebut Chrysler's proffered legitimate non-discriminatory reason. The court does not need to reach these arguments, however, because Hicks cannot establish a prima facie case.

otherwise lost a position to a younger individual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Hicks cannot meet the fourth prong of the prima facie case. Hicks testified: "I believe I remember four or five individuals who worked at Pentastar Electronics, Incorporated who were transferred over to the Acustar plant. . . . And the age of those people compared to the age of older employees indicated that that was a consideration." The Hicks has not presented the court with any evidence regarding the identity of the four or five employees and their ages. The only evidence is what he believes he remembers.

In a failure to promote situation, the plaintiff must show "that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998). Additionally, an "ADEA plaintiff must show that he was replaced by someone 'substantially younger,' not necessarily by someone under age 40." *Id.* (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 134 L. Ed. 2d 433, 116 S. Ct. 1307, 1310, (1996)). Again, Hicks failed to provide the court with any information regarding those persons actually transferred and their ages as compared to Hicks. Additionally, if Hicks alleges he was denied a supervisory position because of his age, he did not cite the court to any evidence establishing that someone younger than he received a job which he sought with Chrysler.

Moreover, Hicks testified in his deposition:

Q: You have no factual basis whatsoever to maintain that your age was a factor in you not getting a bargaining unit position, do you?
A: No.
Q: No knowledge, information or belief from any factual source, correct?
A: Correct.
Q: Sheer speculation, correct? Right?
A: I am thinking about that answer.

13

> Q: Well, if you have no factual information, which you just told me was the case, I have got to assume by implication that means all it could be is speculation, isn't that right?
> A: I have not been told, nobody has told me that my age kept me from going in the BU [bargaining unit], therefore, that is a true statement, yes.

(Movant Chrysler's Supplemental Evidence, Hicks Depo., Ex. MM at 801, 1041-42.[5])

> Q: But what I really want to know is what knowledge you have or what facts you have that would tend to suggest that your age had anything to do with this or with anything else at issue.
> A: I have no first-hand knowledge that age was a consideration in turning me down for these three jobs.
> Q: You have no firsthand knowledge and you have no secondhand hearsay or rumor knowledge, either, do you?
> A: Correct.
> Q: You have no information whatsoever that age had anything to do with your not getting those positions?
> A: Right. Correct.

(Movant Chrysler's Evidence, Hicks Depo., Ex. I at 910.)

> Q: You are not alleging that Chrysler sold Pentastar in order to discriminate against you or anyone else on the basis of their age, are you?
> A: No.
> Q: Okay. For that matter you are not alleging that the investor group bought PEI, or bought Pentastar, which became PEI, in order to discriminate against you on the basis of your age, right?
> A: I don't think so.

(Movant Chrysler's Evid., Hicks Depo., Ex. I, at 1301.) Defendant's motions are granted as to this claim.

## V.  Whistleblower claims

Hicks alleges a claim under 31 U.S.C. § 3730(h) (2001), which reads in part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and

---

[5] The court is unsure if the pages noted are correctly numbered; the pages referred to by the court are the last three pages in the MM section of the submission.

14

> conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

*Id*. Hicks contends that the defendants took action against him in retaliation for his engaging in a protected activity. Specifically, his performance evaluations were skewed and his employer refused to allow him to transfer to a bargaining unit position because he refused to participate in making fraudulent claims.

Defendants argue that Hicks' refusal to participate in fraudulent claims is not a protected activity under the act. Hicks now claims he was retaliated against because he investigated a false claim. Hicks' First Amended Complaint, however, indicates he allegedly experienced retaliation "[u]pon protest and refusal of Relator to participate in said fraudulent activities." (First Amended Compl. [Doc. 4] ¶ 34, 58, 82.) The statute clearly contemplates retaliation for telling others about fraud, not refusing to take part in the fraud. The Eleventh Circuit has held "that § 3730(h) protection is available not only where a false claims action is actually filed, but also where the filing of such an action, by either the employee or the government, was 'a distinct possibility' at the time the *assistance* was rendered." *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996) (emphasis added). Hicks does not claim he was discriminated against for any assistance rendered having anything to do with a filed lawsuit or a lawsuit to be filed. Moreover, Congress contemplated providing a safe haven for persons who took action to reveal fraud and were discriminated against because of those revelations:

> The Committee believes changes are necessary to halt the socalled "conspiracy of silence" that has allowed fraud against the Government to flourish. John Phillips, co-director of the Center for Law in the Public Interest, a nonprofit law firm specializing in assisting "whistleblowers", testified that more effective fraud detection will only occur if changes are made at the basic employee level. Phillips said people who are unwilling participants in fraudulent activity *must be given an opportunity to speak up and take action*

15

*without fear* and with some assurance their disclosures will lead to results. [footnote omitted]

S. Rep 99-345, at 6 (1986). Hicks' claim that retaliation resulted from his refusal to participate in fraud does not fall with the purview of the statute. Additionally, in regards to his performance evaluations, Hicks testified as follows:

> Q: And you don't know of any situation where upper management has changed the performance rating that have been assigned to you by your direct supervisor, correct?
> A: For me, no.
> Q: Do you have any reason to believe that either Lloyd Childs or Bo Harvey or Walt Buie ever gave you a performance rating that was lower than you actually deserved because you wouldn't follow along and engage in these false claims?
> A: I do not.
> . . . .
> Q: And you don't have any personal information or knowledge that would suggest that any of your performance ratings were ever lowered because you wouldn't engage in these false claims, do you?
> A: Personal knowledge, no.
> Q: You don't have any secondhand knowledge, do you?
> A: No.
> Q: You don't have any facts or information whatsoever to support any claim that your performance ratings were made lower because you didn't engage in these false claims, do you?
> A: Correct.

(Movant Chrysler's Supplemental Evidence, Hicks Depo., Ex. MM at 796-98, 99.) The defendant's motions as to this claim are due to be granted.

## VI.   Conspiracy claims

Under the False Claims Act, a cause of action exists if persons "conspire[ ] to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3) (2001). Relator concedes that members of a corporation cannot conspire with themselves. Relator also argues, however, that if the court, or a jury, finds that Chrysler is not the alter-ego of Pentastar, then Chrysler and Pentastar can be co-conspirators.

16

In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), a case construing the Sherman Act, the Supreme Court held that a parent company and its wholly-owned subsidiary cannot form a conspiracy because the entities are not separate entities joining to accomplish a shared goal, but the same entity. *Id.* at 769. This Court finds, whether or not the jury determines Pentastar was the "alter-ego" of Chrysler, there are no facts here to establish a conspiracy between two separate entities. Summary judgment will therefore granted as to the conspiracy claim.

## VII. Schemes I, II, and III

The Court has spent a great amount of time and effort examining the lengthy and detailed facts related to each scheme. In addition, the Court considered the arguments of the parties presented to the court at hearing. Upon due consideration, the Court finds there are genuine issues of material fact such that a jury must decide the outcome. Therefore, summary judgment is due to be denied as to these claims.

## VIII. Chrysler as the Alter-ego of Pentastar

Both parties seem to address this issue as if this court has subject matter jurisdiction in this case because of diversity jurisdiction; however, this case is based on federal question jurisdiction. "When disposition of a federal question requires reference to state law, federal courts are not bound by the forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy. 1A *Moore's Federal Practice* P 0.325 (2d ed. 1979)." In *re Crist,* 632 F.2d 1226, 1229 (5th Cir. 1980). "In federal question cases . . . we look to federal choice of law principles. *See Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642, 68 L. Ed. 2d 500, 101 S. Ct. 2061 (1981); *see also Edelmann*

17

*v. Chase Manhattan Bank,* 861 F.2d 1291, 1294 (1st Cir. 1988)." *Brotherhood of Locomotive Engrs v. Springfield Terminal RY.,* 210 F.3d 18, 25-26 (1st Cir. 2000). A federal court should apply federal common law if the statute in question requires the law throughout the federal system be uniform. *Id.*

In a *qui tam* action, there is a need for a uniform law governing when a court should pierce the corporate veil. Uniformity would further the reasoning behind the statute, stopping fraud by stopping parties from applying one state's law instead of another in order to avoid liability. Further, a body of common law exists on the subject for a court to apply.

In *Talen's Landing, Inc. v. M/V Venture, 11,* 656 F.2d 1157 (5th Cir. 1981), the Fifth Circuit cited to a summary of the federal common law regarding piercing the corporate veil:

> In an appropriate case, the doctrine of "alter ego" may be applied. *See, e. g., Allied Chemical Corp. v, Randall,* 321 F.2d 320, 323 (7 Cir., 1963); [citation omitted]. Under . . . federal common law, a finding of control or domination of a corporation by an individual or a corporate entity and the use of the corporate fiction are necessary prerequisites to the application of the alter ego theory of liability. *Noe v. Roussel,* 310 So.2d 806, 826 (La., 1975); *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.,* 424 F. Supp. 815, 821-22 (N.D.Ill., 1976). Once such a connection is established, it is appropriate to brush aside the corporate veil when it appears a corporation was organized for fraudulent purposes, illegality, or wrongdoing. In *American Anthracite B Coal Corp. v. Amerocean S.S. Co.,* 131 F. Supp. 244, 248 (E.D. Pa., 1955); *Bossier Millwork & Supply Co. v. D & R Construction Co.,* 245 So.2d 414, 416-17 (La.App. 2 Cir., 1971); La.Rev.Stat.Ann. sec. 12:95 (West, 1969). Likewise, the fiction of corporate entity will be disregarded when required in the interest of justice. *In re Bowen Transports, Inc.,* 551 F.2d 171, 178-79 (7 Cir., 1977); *American Trading & Production Corp. v. Fischbach & Moore, Inc.,* 311 F. Supp. 412, 416 (N.D.Ill., 1970); *Giuffria Realty Co., Inc. v. Kathman-LandM Inc.,* 173 So.2d 329, 334-35 (La.App. 4 Cir., 1965). The corporate veil should always be pierced "when the theory of separate entity leads to an absurdity or persons involved in a corporation seek to use the legal fiction to immunize them from the consequences of their fraud or illegal actions," *Haynes v. Champagne Tile Corp.,* 228 F. Supp. 157,159 (E.D.La., 1964) (applying Louisiana law); *see also DeWitt Truck Brokers v. W, Ray Flemming Fruit* Co., 540 F.2d 681 (4 Cir.,

> 1976); *American Courier Corp. v. Louisiana Public Service Commn,* 256 La. 464, 236 So.2d 802 (La., 1970), or to prevent injustice to third parties, *Houston Oil Field Material Co. v. Stuard,* 406 F.2d 1052, 1054 (5 Cir., 1969); *Lushute v. Diesi,* 343 So.2d 1132, 1135 (La.App. 3 Cir., 1977), aff'd in part & rev'd in part, 354 So.2d 179 (La., 1978), or where one corporation becomes the conduit of another, Mull v. *Colt* Co., 31 F.R.D. 154 (S.D.N.Y., 1962); *In re Gibraltor Amusements, Ltd,* 291 F.2d 22, 24-25 (2 Cir., 196 1); *Noe v. Roussel, supra, Mayo v. Pioneer Bank & Trust Co.,* 274 F.2d 320, 321 (5 Cir., 1960) (applying Louisiana law).

*Id.* at 1161 n6. Other circuits have held similarly:

> We have held that disregard of corporate separateness "requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Id.* (internal quotations omitted). As formulated by the Second Circuit, federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own. See *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir. 1980).

*Chan v. Society Expeditions,* 123 F.3d 1287, 1294 (9th Cir. 1997).

> Fraud or something like it is required. *See, e.g., United States v. Van Diviner,* 822 F.2d 960, 964-65 (10th Cir. 1987) (applying federal common law); American Bell Inc. v. Federation of Tel. *Workers of Pa.,* 736 F.2d 879, 886 Od Cir. 1984) (federal law); *United States v. Pisani,* 646 F.2d 83, 88 (3d Cir. 1981) (federal law); *Seymour v. Hull & Moreland Engg,* 605 F.2d 1105, 1111 (9th Cir. 1979) (federal law); *Laborers' Pension Fund v. Litgen,* 709 F. Supp. at 143 (federal law); *Pauley Petroleum, Inc. v. Continental Oil Co.,* 43 Del. Ch. 516, 239 A.2d 629i, 633 (Del. 1968) (Delaware law); *Mabon, Nugent & Co. v. Texas American Energy Corp.,* (1987-1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) P 93,674, at p. 98,092 (Del.Ch. Jan. 27, 1988) (Delaware law); *Terry Apartments Associates v. Associated-East Mortgage Co.,* No. 4778, 3 Del.J. Corp.L. 560, 564-65 (Del Ch. Jan. 31, 1977) (Delaware law); J.E. *Rhoads & Sons, Inc. v, Ammeraal, Inc.,* 1988 U.S. Del. Super. LE)aS 116 (Del Super. 1988) (Delaware law)[.]

*Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 268 (D. Del. 1989).

19

This Court cannot find on summary judgment that the relator, as a matter of law, should not be allowed to pierce the corporate veil and hold Chrysler liable. It is clear from the evidence that Chrysler caused the incorporation of Pentastar, purchased the materials used by Pentastar, paid vendors for Pentastar, maintained programs for use by Pentastar, would be responsible in the event Pentastar was in default, paid Pentastar employees, received monies paid to Pentastar, and used the Chrysler logo on Pentastar invoices. Additionally, Toney thought of himself as a Chrysler employee. Chrysler so dominated Pentastar operations that a genuine issue of material fact exists as to whether Chrysler should be treated as Pentastar's alter-ego.

An appropriate judgment will be entered with this memorandum of opinion.

Done, this 16th of June, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE